LITTLER MENDELSON
A Professional Corporation
885 Third Avenue, 16th Floor
New York, New York 10022.4834
212.583.9600

Christina L. Feege, Esq. (1474)
Attorney for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA ROCKMORE, <br><br>                Plaintiff, <br>   -against- <br><br> DARRICK E. ANTELL, <br> DARRICK E. ANTELL, M.D., D.D.S., P.C., <br> DARRICK E. ANTELL, M.D., F.A.C.S and <br> DARRICK E. ANTELL, M.D., F.A.C.S., P.C., <br><br>              Defendants. | Case No.:  07-CV-3592 |

---

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO DISMISS AMENDED COMPLAINT

---

**LITTLER MENDELSON, P.C.**
**Attorneys for Defendants**
**885 Third Avenue -16th Floor**
**New York, New York 10022**
**(212) 583-9600**

*Of Counsel:*
Christina L. Feege, Esq.

## PRELIMINARY STATEMENT

Defendants Darrick E. Antell; Darrick E. Antell, M.D., D.D.S., P.C.; Darrick E. Antell, M.D., D.D.S., P.C., F.A.C.S.; Darrick E. Antell, M.D., F.A.C.S.; and Darrick E. Antell, M.D., F.A.C.S., P.C. (collectively "Defendants") hereby move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for immediate dismissal of the claims asserted against it by Plaintiff Barbara Rockmore ("Rockmore"). Rockmore is a former employee of Defendants, who, at the time of her resignation, executed a full release of claims in exchange for good and sufficient consideration (the "Release").

Having received the full benefit of her bargain with Defendants, Rockmore now seeks to avoid the Release and proceed with claims alleging race-based, religious-based, and gender-based discrimination in violation of the New York City Human Rights Law ("NYCHRL"), and race-based discrimination in violation 42 USC § 1981. (Defendants strenuously deny those allegations, which are without any factual basis.) As discussed below, there is no legally sufficient ground for avoiding Rockmore's clear and unambiguous release of claims. While Rockmore contends that she signed the Release under duress and in fact now attempts to tender back the benefit she received (three years after the fact), this claim is belied by the undisputed facts set forth in the Amended Complaint, which do not plead a viable claim of economic duress. Further, by waiting almost three years before attempting to void the Release, Rockmore has waived her right to do so. Thus, because all of Plaintiff's claims are barred by the Release, her Amended Complaint must be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    ROCKMORE'S RESIGNATION AND THE EXECUTION OF THE RELEASE**

Plaintiff Barbara Rockmore was hired by Defendants as a secretary in or about December 1993.  Rockmore eventually assumed the position of office manager and, all tolled, worked for Defendants for more than a decade.  She voluntarily resigned her employment on July 12, 2004, so that she could take a position with another physician.  The following day, the parties discussed a parting severance payment, and Rockmore was asked to sign the office's standard separation agreement in exchange for her severance.  This standard-issue Release was similar to others that Rockmore had executed on behalf of Defendants in connection with other employee departures, so she was fully aware of its terms.  (Indeed, the template agreement was kept on her computer.)  This agreement contained a full waiver of claims against Defendants, as well as its affiliates, officers, shareholders, directors, and employees in exchange for the Company's agreement to pay Rockmore lump sum severance of $3,650.

When she received the proposed Release, Rockmore had from July 13th through July 29th to review it.  After presumably reviewing the Release with an attorney, as she was encouraged to do, Rockmore gave Dr. Darrick E. Antell the fully executed Release, dated July 29, 2004. (A copy of the Release is annexed to the Feege Dec. as Exhibit A.) [1] She made no changes to this

---

[1] In connection with this motion, Defendants have submitted a declaration annexing certain documents that are either referenced or relied upon in the Complaint, such as the Release, and certain invoices and checks reflecting payments made to Plaintiff or on her behalf.  *See* Declaration of Christina L. Feege. (The "Feege Dec.") These documents may properly be considered on a motion to dismiss.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.") (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995)); *Yak v. Bank Brussels Lambert, BBL (USA) Holdings, Inc.*, 252 F.3d 127, 130 (2d Cir. 2001) ("On a motion to dismiss, the court may consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by

agreement other than to add a post-it, reflecting her request that no FICA taxes be withheld from her payment.

Strikingly, on May 23, 2007, almost *three years* after signing the Release and two weeks after Defendants filed their original motion to dismiss her initial Complaint, Plaintiff attempted to nullify the Release by "tendering back" monies she claims to have never received.

**B.     THE ALLEGATIONS IN THE AMENDED COMPLAINT**

Rockmore filed her original Complaint on March 26, 2007.    Following receiving Defendants' motion to dismiss on May 11, 2007, Plaintiff filed an Amended Complaint on May 25, 2007 [Docket # 13].    Despite the fact that the Release barred all suits having bearing on the terms and conditions of Rockmore's employment and/or cessation thereof, the Amended Complaint asserts claims which bear directly on Rockmore's employment, including claims of race-based, religious-based, and gender-based discrimination in violation of the New York City Human Rights Law (First Claim) and race-based discrimination in violation of 42 USC § 1981 (Second Claim).    Each claim pertains to acts that allegedly occurred during Rockmore's employment with Defendants, and were waived when Rockmore executed the Release.

In an attempt to circumvent that fact, Rockmore's Amended Complaint asserts that she executed the Release under economic duress.    This claim is based on the following allegations of fact:

---

reference.'") (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991)).    But in the event that the Court elects not to consider these materials in connection with a Rule 12(b)(6) motion, Defendants strongly urge the Court to treat the motion as one for summary judgment pursuant to Rules 12 and 56(c), based on the documents annexed hereto and any limited discovery that is necessary to establish the validity of the Release, if any.

o  Defendants volunteered to reimburse Rockmore for legal fees she incurred in connection with an unrelated legal proceeding (Amended Compl., ¶ 137);

o  Approximately mid-day on Plaintiff's final day of employment with Defendants, Dr. Antell informed Plaintiff that she would receive a "parting bonus of three weeks pay" (Amended Compl., ¶ 143);

o  Later that day, Rockmore was given the Release (Amended Compl., ¶ 144);

o  Rockmore was told that if she did not sign the Release, she would not get her attorney's fees, her pay, or her pension (Amended Compl., ¶ 146);

o  Plaintiff executed the Release and entered the amount of consideration for the Release, $3,650 (Amended Compl., ¶ 147);

o  At the time she signed the Release, Plaintiff's pension benefits were fully vested (Amended Compl., ¶ 140);

o  Fearing "having her pension taken away, and of having Defendants breach their agreement to pay Plaintiff's legal fees," Plaintiff signed the Release (Amended Compl., ¶ 147);

o  "Without being asked by Plaintiff to do so, Defendants electronically transferred $3,371 to Plaintiffs' bank account," which Plaintiff was told "represents the amount listed on the 'release' (less social security and Medicare withholdings) rather than the parting bonus" (Amended Compl., ¶ 148); and

o  Rockmore "lacked the resources to file and prosecute a law suit against Dr. Antell to receive her pension or to compel the agreed-upon payment for her legal fees," so she signed the Release (Amended Compl., ¶ 150).

As set forth in further detail below, these allegations do not justify rescission of the Release based on duress or on any other ground. Accordingly, the Release must be enforced, and all claims arising on or before July 29, 2004 must be dismissed with prejudice.

### ARGUMENT

### I.

### THE CONTROLLING LEGAL STANDARDS

Defendants bring this motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In adjudicating a motion brought under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations of the Complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Joblove v. Barr Labs., Inc.*, 466 F.3d 187, 200 (2d Cir. 2006) (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)); *Freedom Holdings Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004). Even with the generous latitude given the pleader hoping to avoid dismissal, a motion to dismiss nonetheless should be granted when, as here, the Plaintiff can neither allege nor prove any set of facts that would entitle him to relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Where claims are barred by a release, that defense may be asserted by way of a pre-answer motion to dismiss. *Landau v. American Int'l Group*, 97 Civ. 3465, 1997 WL 590854, at *9 (S.D.N.Y. Sept. 17, 1997), *aff'd*, No. 97-9365, 1998 U.S. App. LEXIS 24670 (2d Cir. Sept. 29, 1998).

## II.

### ROCKMORE'S DISCRIMINATION CLAIMS ARE BARRED BY THE RELEASE

The Release couldn't be more clear: in exchange for valuable consideration, Rockmore released "any and all claims, suits or causes of action of any kind including, but not limited to, any and all matters arising out of the services . . . provided for the PC and the cessation of said services, and alleged violations of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the New York Human Rights Law, the New York City Human Rights Law, New York wage-hour and wage-payment laws, and any other federal, state or local civil or human rights or employment law, wage-hour law, or any other alleged violation of local, state and/or federal law, regulation or ordinance, and/or public policy, contract or tort law, having any nearing whatsoever on the terms and conditions of [ ] employment and/or the cessation of the services [ ] performed for the PC." (Release, ¶ 3.)  In signing the Release, Rockmore attested that her decision to sign the Release was made "after careful thought, and after an opportunity to consult with an attorney, which the PC [ ] advised [her] to do." (Release, ¶ 8.)

Under these circumstances, the release is binding and it is entirely proper for the Court to dismiss the Amended Complaint. *See, e.g., Hseuh v. Bank of New York,* 05 Civ. 5345, 2005 U.S. Dist. LEXIS 25791 (S.D.N.Y. Oct. 31, 2005) (dismissing plaintiff's ADA claim on grounds that the plaintiff knowingly and voluntarily entered into an agreement with his employer releasing all claims.).  This is true even in the face of Plaintiff's conclusory allegations of duress since that defense is not, as set forth below, adequately pled as a matter of law and thus, cannot preclude enforcement of the Release.  *Adalian v. Stuyvesant Plaza, Inc. et al.,* 733 N.Y.S.2d 739, 741 (3d Dep't 2001) ("A signed stipulation of settlement or release generally 'will not be lightly cast

aside' and will be set aside only upon a showing 'sufficient to invalidate a contract, such as fraud, collusion, mistake or accident * * *' It is well settled also that '[i]n order to prove legal duress, a party must adduce evidence that a wrongful threat precluded the exercise of the party's free will'") (internal citations omitted).

A.    **ROCKMORE'S ALLEGATIONS OF DURESS ARE WITHOUT LEGAL OR FACTUAL FOUNDATION**

Rockmore's claim, boiled down to its basics, is that she entered into the Release because she was not financially able to sue her employer to recover her pension and reimbursement of attorneys' fees. These facts, however, do not amount to a legally cognizable claim of duress, which requires factual allegations demonstrating that Defendants: "'(1) [made] a wrongful threat precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no other alternative.'" *Knoll v. Equinox Fitness Clubs et al.*, No. 02 Civ. 9120, 2003 WL 23018807, at *7 (S.D.N.Y. Dec. 22, 2003) (quoting *Nelson v. Stanley Blacker, Inc.,* 713 F.Supp. 107, 110 (S.D.N.Y.1989)).

Even reading the Amended Complaint generously, it is clear that Rockmore has not adequately alleged any of these elements. First, Plaintiff does not assert that Dr. Antell knew or had reason to know that she lacked the resources to prosecute a lawsuit to recover unpaid wages and other remuneration. More importantly, to state a claim for economic duress, a plaintiff must "do more than merely claim that the other party knew about and used his or her poor financial condition to obtain an advantage in contract negotiations." *Davis & Assocs., Inc. v. Health Mgmt. Servs., Inc.,* 168 F.Supp.2d 109, 114 (S.D.N.Y. 2001); *Farrell v. Title Assocs.,* 03 Civ. 4608, 2004 U.S. Dist. LEXIS 2508, at *17 (S.D.N.Y. Feb. 19, 2004) ("'That plaintiff knew defendant was in financial straits when demanding commission amounts to no more than mere hard bargaining tactics.'") (quoting *Kenneth D. Laub & Co. v. Domansky,* 568 N.Y.S.2d 601, 602 (1st

Dep't 1991)).

Indeed, "[b]ecause an element of economic duress is [ ] present when many contracts are formed or releases given, the ability of a party to disown his obligations under a contract or release on that basis is reserved for *extreme and extraordinary cases.* Otherwise, the stronger party to a contract or release would routinely be at risk of having its rights under the contract or release challenged long after the instrument became effective." *VKK Corp., v. National Football League,* 244 F.3d 114, 123 (2d Cir. 2001) (emphasis added).

Likewise, the Amended Complaint is devoid of any facts to suggest that Rockmore had no other alternative but to sign the Release. While the Amended Complaint makes much of Rockmore's purported inability to afford legal representation, if she did not want this bargain, she was not compelled to take it. Despite Plaintiff's contention to the contrary, given the proliferation of contingency fee employment lawyers, any allegation that Rockmore had no alternative but to execute the Release cannot be credited. Quite simply – Ms. Rockmore's financial constraints, of which Defendants were not aware, do not amount to economic duress, and thus, cannot be used as a basis to void the Release.

**B.    R̲O̲C̲K̲M̲O̲R̲E̲ ̲H̲A̲S̲ ̲R̲A̲T̲I̲F̲I̲E̲D̲ ̲T̲H̲E̲ ̲R̲E̲L̲E̲A̲S̲E̲**

Even if Rockmore had adequately pled grounds for voiding the Release – which she has not – her claims should nevertheless be dismissed because she has unequivocally ratified the Release. Specifically, Rockmore did not repudiate the Release after the source of her alleged duress was removed. In this case, the attorneys' fees that Dr. Antell agreed to cover were paid by check issued *by Plaintiff herself* in her capacity as office manager, dated July 22, 2004, a week *prior* to Plaintiff's execution of the Release. Indeed, the invoice relating to payment of these fees (which are referenced extensively in the complaint) contains a notation, *in Plaintiff's*

*own handwriting,* indicating a payment made on July 22nd. (*See*, billing records of the law firms of Arent Fox and Arkin Kaplan LLC, and Defendants' check dated July 22, 2004, annexed to the Feege Dec. as Exh. B.) Likewise, Rockmore's final pay was advanced by direct deposit posted on July 23, 2004, representing her pay through July 29, 2004, plus all accrued vacation time and an additional $600 "bonus." Rockmore herself processed this payroll, so she cannot claim to have no knowledge of these events. Further, Plaintiff received her severance payment in the lump sum of $3,650 (net $3,370.77) by direct deposit posted on August 6, 2004 (*See*, Payroll Register, annexed to the Feege Dec. as Exh. C and Amended Complaint ¶ 148), and rolled over her pension funds shortly thereafter to an account that was outside Defendants' control.

By failing to renounce the Release after receiving these payments – when all conceivable duress was removed – Rockmore ratified the contract, and effectively made a new promise and affirmed her own legal duty to perform. *See Knoll*, 2003 WL 23018807, at *8 ("'[O]nce the duress is removed, the party claiming duress must choose either to promptly repudiate the contract or to acquiesce to its terms pursuant to the doctrine of ratification'") (quoting *Kovian v. Fulton Co. Nat. Bank and Trust Co.,* 857 F.Supp. 1032, 1039 (N.D.N.Y. 1994)). Indeed, the simple act of "retaining consideration after learning that a release is voidable operates to ratify that release." *De Palma v. Really IQ Corp.,* No. 01 CIV 446, 2002 WL 461647, at *4 (S.D.N.Y. 2002); *Restatement (Second) of Contracts*, § 380.

Although Plaintiff cites to N.Y.C.P.L.R. § 3004 for the proposition that she was not required to tender back the benefit, in federal courts in this Circuit, the tender back doctrine applies not only to commercial contracts, but also to releases of federal discrimination claims,[2]

---

[2] In *Livingston v. Bev-Pak, Inc.,* 112 F.Supp.2d 242 (N.D.N.Y. 2000), the court applied the tender back doctrine in dismissing plaintiff's federal discrimination claim. With respect to the asserted state discrimination claim, the court found:

which are ratified if the employee does not promptly tender back the benefits he or she received in connection with the release.[3] *See. e.g., Davis v. Eastman Kodak Co.*, 04-CV-6098, 2007 U.S. Dist. LEXIS 23193 (W.D.N.Y. Mar. 29, 2007) ("Although there has been disagreement among courts as to whether the ratification and/or tender back doctrine should be applied in the context of a plaintiff-employee seeking to enforce Title VII rights, courts within the Second Circuit have applied both doctrines in Title VII cases . . . '[A] plaintiff who accepts and neither returns nor offers to return the consideration he or she has received for consideration for executing a release, is deemed to have ratified the Release and is thereby barred from challenging its validity.'")[4]

---

> Although New York abolished the tender back rule when it enacted N.Y. C.P.L.R. § 3004, other factors may lead a court to conclude that a party has ratified an otherwise voidable contract. These factors include (1) the party's awareness of the voidable nature of the release and the length of time that the employee retains the consideration after he learns that the release is voidable before attempting to repudiate the release; and (2) whether the circumstances that made the release voidable persisted.

*Id.* at 250 n.6 (internal citation omitted).

[3] This doctrine does not apply to claims arising under the Older Worker Benefit Protection Act, which are not at issue here.

[4] After dismissing plaintiffs' Title VII and § 1981 claims in *Davis v. Eastman Kodak Co.*, the court dismissed plaintiffs' New York State Human Rights claim stating:

> In most instances, where all federal law claims are dismissed in the early stages of a lawsuit, "the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." Here, having dismissed the federal discrimination claims . . . this Court declines to exercise jurisdiction over their remaining state law claims and hereby dismisses them . . . [T]his Court lacks subject matter jurisdiction over plaintiffs' state law claims.

*Davis*, 2007 U.S. Dist. LEXIS 23193, at *39-40 (internal citations omitted). The Court should do the same in this instance.

Having accepted the full benefit of the bargain for nearly three years, Ms. Rockmore unquestionably ratified the Release and waived any alleged breach thereof, as well as any claim of duress. In fact, Plaintiff's transparent attempt to tender back the benefit was made only *after* Defendants' filed their original motion to dismiss.[5] Plaintiff does not argue, nor can she argue, that she did not know that the Release was potentially voidable until May 23, 2007. To the contrary, she states in her Amended Complaint that she believed, implicitly at all times, the Release to be "invalid" (Amended Compl., ¶ 153).

## C.    BY HER DELAY, ROCKMORE HAS WAIVED HER RIGHT TO VOID THE RELEASE

Of course, even had she not ratified the Release, Rockmore should be deemed to have waived any claim for rescission based on her extreme delay in asserting this claim. Rockmore executed the Release on July 29, 2004, yet she did not seek rescission of that agreement until almost three years later, when she served her Complaint in April, 2007. Since "delays as short as six months have been held to constitute waiver of [an economic duress] claim," no matter how you slice it, Rockmore's delay constitutes a waiver of any claim she might have to void the Release. *See VKK Corp.*, 244 F.3d at 125 (stating that a party challenging a release agreement on grounds of economic duress "was required to challenge its validity promptly after [the] execution, or not at all.") (collecting cases in which delays ranging from six months to two years constituted waiver));[6] *Legal Aide Society v. City of New York*, 114 F.Supp.2d 204, 225 (S.D.N.Y. 2000) ("a party who seeks to void a contract by reason of duress must act promptly to

---

[5] "[H]istorically, at least 'an offer to tender back [must be] made *coincident with the bringing of the action* challenging the underlying contract, to substitute for the actual tender'" *Id.* at *31-32 (emphasis added) (alteration in original).

[6] Here, Rockmore provides no explanation as to why she delayed seeking rescission for so long.

repudiate the contract"). As such, Rockmore should be estopped from attempting to rescind the agreement now based on her after-the-fact claims of duress.

## III.

### DEFENDANTS ARE NOT AN "EMPLOYER" UNDER CITY HUMAN RIGHTS LAW

Rockmore's first cause of action asserts race-based, religious-based, and gender-based discrimination, allegedly in violation of the New York City Human Rights Law ("NYCHRL"). However, these claims must be dismissed, as Defendants are not employers covered by the statute. Pursuant to the NYCHRL, "the term 'employer' does not include any employer with fewer than four persons in his or her employ." N.Y.C. Admin. Code § 8-107.1. In the instant case, Defendants, at all relevant times, employed fewer than four persons at any one time, and Dr. Antell personally employed none. As such, Defendants are not covered employers, as that term is defined under the NYCHRL. Rockmore's first cause of action must therefore be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully seek dismissal of Plaintiff's

Amended Complaint in its entirety, and with prejudice.[7]

Dated: New York, New York
        June 14, 2007

                                        LITTLER MENDELSON, P.C.
                                        *Attorneys for Defendants*


                                        By: _____/S/_____
                                            Christina L. Feege (CF-1474)
                                            885 Third Avenue - 16th Floor
                                            New York, New York  10022
                                            (212) 583-9600

---

[7] Plaintiff already has exercised her ability to amend her complaint "as a matter of course." Fed. R. Civ. P. 15(a).  While the court has the discretion to grant subsequent requests to amend, the Second Circuit has recognized that "[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).