LITTLER MENDELSON
A Professional Corporation
885 Third Avenue, 16th Floor
New York, New York 10022.4834
212.583.9600

Christina L. Feege, Esq. (1474)
Attorney for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA ROCKMORE,<br><br>               Plaintiff,<br>-against-<br><br>DARRICK E. ANTELL,<br>DARRICK E. ANTELL, M.D., D.D.S., P.C.,<br>DARRICK E. ANTELL, M.D., F.A.C.S and<br>DARRICK E. ANTELL, M.D., F.A.C.S., P.C.,<br><br>               Defendants. | Case No.: 07-CV-3592 |

## MEMORANDUM OF LAW IN FURTHER SUPPORT
## OF MOTION TO DISMISS AMENDED COMPLAINT

LITTLER MENDELSON, P.C.
**Attorneys for Defendants**
**885 Third Avenue -16th Floor**
**New York, New York 10022**
**(212) 583-9600**

*Of Counsel:*
Christina L. Feege, Esq.

Defendants, through undersigned counsel, seek the dismissal of Plaintiff Barbara Rockmore's Amended Complaint, based on her execution of a valid separation agreement and release of claims. Seeking to avoid this result, Plaintiff makes two[1] equally unpersuasive and legally untenable arguments.[2] First, she argues that she executed the agreement under economic duress, based on her fear that Defendants would later breach another, collateral agreement to pay unrelated legal fees and/or interfere with her pension rights if she refused to do so. Second, Plaintiff attempts to change long settled federal and state law concerning the validity of release agreements, arguing that the standard form waivers of employment claims executed on a daily basis by departing employees are void as against public policy.[3]

As demonstrated below, neither of these arguments have any merit. Plaintiff's first argument, that she had "no alternative" but to sign the Release because it *might* be difficult to later procure legal representation *if* Defendants decided to interfere with her vested pension benefits or refused to pay ongoing legal fees, does not constitute economic duress as a matter of law. And even if it did, by delaying almost three years to evidence any intent to avoid the Release, Plaintiff has unequivocally ratified the Release, which is in all other respects is valid, and must be enforced.

## ARGUMENT

### POINT I
### PLAINTIFF HAD OTHER ALTERNATIVES OTHER THAN TO ACCEPT THE RELEASE AND BY HER COURSE OF CONDUCT, RATIFIED IT

To prove that she was subjected to economic duress, a party must required to plead facts demonstrating that Defendants: "'(1) [made] a wrongful threat precluding the exercise of free will; (2)

---

[1] It is important to note that, after receipt of Defendants' initial motion papers, Plaintiff was given the opportunity to amend her Complaint. Thus, to the extent the Court grants Defendants' motion, it should be with prejudice and without further leave to amend.

[2] These arguments are asserted in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp.").

[3] Notably, while Plaintiff's motion papers make passing reference to the fact that the Release was not made on a knowing and voluntary basis, she does not assert that she did not read or understand the Release, nor does she claim that she did not know that she was giving up important legal rights in exchange for valuable consideration. Plaintiff has asserted two, and only two, grounds for voiding the Release: because the Release was procured under economic duress and because it allegedly violates public policy.

under the press of financial circumstances; (3) where circumstances permitted *no other alternative*.'" *Knoll v. Equinox Fitness Clubs et al.*, No. 02 Civ. 9120, 2003 WL 23018807, at *7 (S.D.N.Y. Dec. 22, 2003) (quoting *Nelson v. Stanley Blacker, Inc.*, 713 F.Supp. 107, 110 (S.D.N.Y.1989)) (emphasis added). In order to demonstrate that Plaintiff had "no alternative" but to sign the Release, Plaintiff argues that: It *might* be difficult to later procure legal representation *if* Defendants decided to interfere with her vested pension benefits or refused to pay ongoing legal fees. For several reasons, this speculative notion is simply insufficient to show that Plaintiff had no alternative but to sign the Release.

First, Plaintiff has failed to show that she was truly forced into signing the Release in the first place. The essence of a duress claim is that the person on the other side of the bargaining table "knew about and used his or her poor financial condition to obtain an advantage in contract negotiations.'" *Knoll*, 2003 WL 23018807, at *7 (quoting *Davis & Assocs., Inc. v. Health Mgmt. Servs., Inc.*, 168 F.Supp.2d 109, 114 (S.D.N.Y. 2001) ); *see also Farrell v. Title Assocs.*, 03 Civ. 4608, 2004 U.S. Dist. LEXIS 2508, at *17 (S.D.N.Y. Feb. 19, 2004) ("'That plaintiff knew defendant was in financial straits when demanding commission amounts to no more than mere hard bargaining tactics.'") (quoting *Kenneth D. Laub & Co. v. Domansky*, 568 N.Y.S.2d 601, 602 (1st Dep't 1991)). Here, Plaintiff's concerns were two fold: that she did not have the resources to pay for defense counsel, and that Defendants might attempt to make her the target of a federal investigation into the medical practice's tax returns. However, Plaintiff does not allege that Defendants knew that she did not have the resources to pay for continuing legal representation or that paying for counsel herself would leave her "indebted,"[4] or indeed, any other information about Plaintiff's purported financial condition. Similarly, Plaintiff does not allege that she communicated her fears about Dr. Antell possibly conspiring to set her up as the fall guy in a government investigation. Without this knowledge, it is impossible to conceive how Defendants possibly could have used Plaintiff's undisclosed fears about their future course of conduct to their advantage in negotiating the Release.

---

[4] Opp., p.5; Cplt. ¶147.

3

Indeed, the court refused to credit a similarly speculative argument in *Landau v. American International Group,* 97 Civ. 3465, 1997 WL 590854 (S.D.N.Y. Sept. 17, 1997), *aff'd,* No. 97-9365, 1998 U.S. App. LEXIS 24670 (2d Cir. Sept. 29, 1998). There, plaintiff attempted to assert employment discrimination claims under the New York State Human Rights Law and a benefits claim under the Employee Retirement Security Act. However, as in the instant case, plaintiff signed a separation agreement and release, agreeing to waive all claims against his former employer. In consideration for this agreement, his former employer agreed, *inter alia,* to record Plaintiff's termination as a voluntary resignation rather than a discharge, and to provide potential employers with a reference from his former manager. In attempting to resurrect his released claims, Plaintiff argued that his agreement was procured under duress, and that that duress was ongoing, on the theory that his employer could, at any time, decide to breach its agreement not to disclose his discharge or to provide a favorable reference from the manager.

The Court was "unpersuaded" by this argument, finding that Landau had "failed to allege facts indicating that circumstances permitted no alternative other than accepting the release, the third element of a cause of action of economic duress." *Landau,* 97 Civ. 3465, 1997 WL 590854, at * 11. While Landau claimed that he had "no alternative" but to accept the Release, the Court astutely noted: "If the Agreement were voidable, [Landau] could have secured alternate employment and then commenced an action to repudiate it. If AIG attempted to engage in the alleged wrongful conduct Landau feared, and if such conduct would have caused the alleged irreparable harm Landau also apparently feared, he could have sought to prevent it in that action." *Id.* at * 11.

Since Plaintiff attempts to draw a distinction between federal and New York law where none exists, it is important to note that the *Landau* court's approach is consistent with New York law. For example, in *Benjamin Goldstein Productions, Ltd., et al.,* 198 A.D.2d 137, 603 N.Y.S.2d 849 (1st Dep't 1993), the plaintiffs alleged that the other party to a settlement agreement threatened to breach other, collateral agreements between the parties if they refused to execute the settlement agreement, and that

4

these threats constituted duress. The Appellate Division thought otherwise, finding that such threats, even if made, "would not constitute economic duress, since the plaintiffs could have obtained performance from some other source and the ordinary remedy of an action for breach of contract would be adequate." *Id.* at 138; *Sosnoff v. Carter*, 165 A.D.2d 486, 568 N.Y.S.2d 43 (1st Dep't 1991).

The same reasoning applies here. Put simply, there were are any number of steps that Plaintiff could have taken to protect herself without signing the Release. As the *Landau* and *Fish* courts observed, Plaintiff could have immediately commenced an action[5] to enforce the alleged promise between herself and Defendants concerning the payment of her legal fees, as well as to prevent any interference with her pension rights. Indeed, with respect to her pension, she had available to her an even more accessible remedy -- she could have (and in fact did) roll over her pension as soon as she left Defendants' employ. *See* transfer executed August 10 and 17, 2004, for Plaintiff's 401(k) and Profit Sharing plan, annexed to the Feege Declaration, Exhibit 1.

With these options available to her, Plaintiff cannot be heard to say that had no alternative but to execute the Release.

## POINT II
## THROUGH HER DELAY, PLAINTIFF RATIFIED THE RELEASE

In order to avoid a finding of ratification, Plaintiff makes much of her last-minute attempt to tender back the consideration paid to her in connection with the Release. However, tender-back is only half of the equation. "Though factually related, and thus often lumped together for analytical purposes, ***the rules of ratification and tender-back can represent distinct hurdles to employees seeking to avoid the consequences of a release*** . . . once the employee is cognizant of the alleged defect and has a reasonable opportunity to reject or challenge the release, the employee's subsequent decision to keep the

---

[5] While Plaintiff takes pains to argue that such a case would be prohibitively expensive due to the need to engage experts to determine any alleged understatement of profit sharing plan, this is a red herring at best. Plaintiff claims that her concern with respect the Release was and is that Dr. Antell would interfere with her already vested benefits. Obtaining a Court order barring such action would be a fairly simple matter.

5

consideration despite the defect operates to ratify the release." *Davis v. Eastman Kodak Co.*, 04-CV-6098, 2007 U.S. Dist. LEXIS 23193,*17-18 (W.D.N.Y. Mar. 29, 2007) (emphasis added).[6]

As noted in Defendants' initial moving papers, while the failure to tender back consideration is in many cases dispositive, even when tender-back is not an issue, courts have held that a failure to timely repudiate an agreement amounts to an affirmance of the contract, thus ratifying what might otherwise have been a voidable contract.

> The law is well settled that a party seeking to repudiate a contract procured by duress must act promptly lest he be deemed to have elected to affirm it. Such a belated attempt as defendant is here making to nullify a separation agreement which was confirmed, ratified and approved, and at least partially complied with for almost a three-year period, is insufficient. A party who executes a contract under duress and then acquiesces in the contract for any considerable length of time, ratifies the contract.

*Sheindlin v. Sheindlin,* 88 A.D.2d 930, 931 (2d Dep't 1982); *Niosi v. Niosi*, 226 A.D.2d 510, 512 (2d Dep't 1996); *Draper v. Georgia Props.*, 230 A.D.2d 455, 464 (1st Dep't 1997). This is a basic rule of contract law and applies with equal force to commercial contracts, matrimonial separation agreements, and settlement agreements that purport to waive claims. *See, e.g., Morad v. Morad*, 27 A.D.3d 626, 627-28 (2d Dep't 2006) ("[M]otions to set aside contracts procured by duress must be made promptly lest the terms be deemed to have been ratified by the challenging party. The husband's three-year delay in seeking to set the agreement aside barred him from raising the issue of duress."); *Chase Manhattan Bank v. State*, 13 A.D.3d 873, 874 (3d Dep't 2004) ("Compliance with the stipulation and failure to repudiate it for approximately 2 1/2 years unequivocally reveals [the] intention to affirm the agreement"); *Knoll*, 2003 WL 23018807, at *8 ("'[O]nce the duress is removed, the party claiming duress must choose either to promptly repudiate the contract or to acquiesce to its terms pursuant to the doctrine of ratification'"); *Dunn v. Nissan Motor Co.*, 262 A.D.2d 444, 445 (2d Dep't 1999) ("the law is

---

[6] "[F]ederal law controls the validity of and defenses to a release of a federal cause of action." *Landau*, 97 Civ. 3465, 1997 WL 590854, at * 8 n.3 (citing *Locafrance U.S. Corp. v. Intermodal Systems Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977)). *See also Kovian v. Fulton County Nat'l Bank and Trust Co.*, 857 F.Supp. 1032, 1037 n.2 (N.D.N.Y. 1994) (applying the "well-settled principle that federal law controls the validity of a release of a federal cause of action.") (citing *Locafrance*).

well settled that a party seeking to repudiate a contract procured by duress must act promptly lest he or she be deemed to have elected to affirm it."); *Sarepa, S.A. v. Pepsico, Inc.*, 240 A.D.2d 720 (2d Dep't 1997) ("The plaintiff waived any claims of economic duress by its delay in repudiating the settlement agreements promptly.")

Striving to show that her delay of almost three years in seeking rescission is not fatal to her claims, Plaintiff relies heavily on *Brown v. City of South Burlington, Vermont*, 393 F.3d 337 (2d Cir. 2004), which she has misread. According to Plaintiff: "In *Brown*, the Second Circuit held that the District Court erred by concluding that a tender back was untimely as a matter of law merely because two years and five months elapsed between the time when the plaintiff learned of the defendant's alleged fraudulent misrepresentations and the time when the plaintiff tendered back the consideration he received in exchange for the release." Opp., p. 18.

In fact, in remanding the case, the Second Circuit concluded that the District Court, like Plaintiff, had erred by relying solely on Plaintiff's admittedly belated tender-back to find that he had ratified his release agreement. Analyzing the facts more closely, the Second Circuit noted that, regardless of the tender back issue, Defendants were placed on notice of Brown's intention to disaffirm his release within nine months of discovering the alleged fraudulently inducement. *Brown*, 393 F.3d at 346 ("Any examination of reasonableness in this case *must* take into account that *the action was commenced within nine months* after Brown had notice of the alleged fraudulent misrepresentations that induced him to sign the Release.") (emphasis added). This was important, the Court observed, because avoiding a contract on the ground of fraudulent misrepresentation requires not only a manifestation of an intention to avoid a release within a reasonable time after discovery of the fraud but *also* a return of the consideration. *Id*. at 346. Thus, the tender-back issue was far from dispositive.

Clearly, the scenario in *Brown* is distinguishable from the facts of this case, where Plaintiff waited almost three years after learning that the Release was voidable in order to seek its rescission, and

7

took no steps to place Defendants on notice of her intent to avoid her contractual obligations, despite the fact that she believed the contract to be void from the get-go.

Instead of providing rational explanation for this delay, Plaintiff offers up only implausible excuses. For example, she states that the funds that were tendered to her were forwarded "without any request by Plaintiff" – despite the fact that she signed an agreement entitling her to these funds. Opp., p. 14. She also states that Defendants should have been on notice of her intent to avoid the Release because she took no "affirmative act" to manifest her acceptance of her of these funds. Opp., p. 13. This, however, is not the same thing as manifesting an intent to avoid disavow the funds and disaffirm the Release,[7] which is what is required to avoid ratification. After all, Defendants, while accused of many things in this action, are not clairvoyant. Plaintiff's undisclosed uncertainty concerning the source and nature of the consideration tendered to her cannot be said to have placed Defendants on notice of her intent to rescind the Release. The truth is, Plaintiff retained these funds and prior to commencing this action in April 2007, took no "affirmative step" to manifest her asserted confusion on this issue or to otherwise disaffirm her agreement to the Release

In fact, Plaintiff argues that she did not repudiate the Release at all, because of her allegedly ongoing need to for attorneys' fees. As noted above, a similar argument was soundly rejected by the *Landau* court, as well as a host of other courts. For example, in *Kovian v. Fulton County National Bank and Trust Co.,* 857 F.Supp. 1032 (N.D.N.Y. 1994), plaintiffs asserted a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") alleging that a bank devised a fraudulent lending scheme. The bank moved for summary judgment on the ground that plaintiffs had signed a release waiving claims against the bank. "According to plaintiffs, defendants' prior fraud left plaintiffs in no position to decline to sign the release, because defendants refused to cancel plaintiffs' bank debt unless they did so . . . It was only because of defendants' improper actions, plaintiffs assert, that the release was

---

[7] In support of this argument, Plaintiff states that she was unsure whether the funds tendered to her were in fact consideration for the Release, or another the alleged promised bonus. *Said another way, Plaintiff has no reason to believe that those funds did not represent the consideration for her Release.*

8

executed." *Id.* at 1036. As does Plaintiff Rockmore, plaintiffs claimed that the duress was ongoing "because if 'plaintiffs had sought rescission of the release prior to the commencement of this RICO action, then the rescission would have reinstated the [ ] debt . . . so that plaintiffs would have faced the same financial ruin which they sought to avoid by signing the release.'" *Id.* at 1040. The court flatly rejected this contention.

In summarizing the *Kovian* case and applying it to an employment release, the court in *Landau* stated:

> In [*Korvian*], plaintiffs claimed that they were induced into signing a release by defendants who wrongfully agreed to cancel plaintiffs' debt only if plaintiffs signed the release. After waiting *two and one-half years* to commence an action, plaintiffs claimed that if they had earlier repudiated the release, defendants would have reinstated their debt.
>
> The court *rejected* plaintiffs' claim that the duress was never removed, concluding that the release itself removed the duress, and that plaintiffs' fear only related to the renewal of the duress if they commenced an action. The court found this claim insufficient to preclude ratification. Furthermore, the court found that plaintiffs could have sued for rescission of the release, and for breach of contract and fraud to defeat defendants' purported claim relating to the debt. The same reasoning applies to the instant case. As already noted, Landau had the option of commencing an action, and within that action suing to prevent the alleged wrongful conduct that he feared.

*Landau*, 97 Civ. 3465, 1997 WL 590854, at * 11-12 (emphasis added) (internal citation omitted).

Here, Plaintiff's assertion that the duress never ceased simply because she m*ight* later need legal representation in the unrelated proceeding, which, as she has conceded, she does not even know whether it is still ongoing, is unpersuasive. "In essence, plaintiff['s] argument is not that the duress was never removed, but that the duress would be **renewed**" *Kovian*, 857 F.Supp. at 1040 (emphasis in original). As noted above, as a represented party with access to skilled counsel, Plaintiff had ample opportunity and ability to repudiate the release during the past three years.

9

The truth is, despite the fact that Plaintiff knew the Release was voidable in July 2004 (Amended Compl. ¶ 153), she unjustifiably waited until she filed the instant action to challenge the Release.[8] This amounts to ratification under applicable law and requires dismissal of the Complaint.

## POINT III
## WAIVERS OF EMPLOYMENT DISCRIMINATION CLAIMS ARE NOT PROHIBITED BY PUBLIC POLICY

Plaintiff had lodged a two pronged public policy attack on the Release, neither of which has any merit. First, she claims that the Release is void *ab initio* on "public policy" grounds because it attempts to waive claims of employment discrimination. As a threshold matter, Plaintiff's Complaint does not seek rescission of the Release based on a public policy; thus, she may not now raise such a claim in opposition to Defendants' motion. But even if this claim is properly before the Court, it is unpersuasive. It is well-settled that "[e]mployees may waive employment discrimination claims as long as such a waiver is made knowingly and voluntarily" *Benson v. Nynex, Inc.*, No. 97 Civ. 2168, 2001 WL 579786, * 2 (S.D.N.Y. Jan. 5, 2001), *aff'd,* 01-7751, 2002 U.S. App. LEXIS 10246 (2d Cir. April 24, 2002) (dismissing plaintiff's claims under Title VII, the Equal Pay Act, and New York State Human Rights Law because plaintiff executed a release) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)); *see also Knoll*, 2003 WL 23018807 (dismissing plaintiff's claims, *inter alia*, under the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law because plaintiff executed a release). There is simply no basis to void the Release based on public policy grounds.

As a second line of attack, Plaintiff argues that the mere allegation of duress requires summary denial of Defendants' motion. Opp., p.3. This argument is also on the wrong side of well-settled law. Federal district courts sitting in New York routinely grant Rule 12(b)(6) motions seeking dismissal based on the defense of release and waiver, even in cases where fraud or duress are alleged. *See, e.g.,*

---

[8] Plaintiff speculates that Defendant did not rely in Plaintiff's agreement during the three year period of time, and thus, has suffered no prejudice based on the her delay. However, three years is a long period of time. During this period, evidence which otherwise could have been preserved, can be lost and memories undoubtedly fade. Thus, Plaintiff's blithe argument -- that the only prejudice to Defendants caused by Plaintiff's delay is the lost use of $3650 – should not be credited.

*Hseuh v. Bank of New York*, 05 Civ. 5345, 2005 U.S. Dist. LEXIS 25791 (S.D.N.Y. Oct. 31, 2005) (dismissing plaintiff's ADA claim on grounds that the plaintiff knowingly and voluntarily entered into an agreement with his employer releasing all claims, even though he alleged duress); *Cheung v. N.Y. Palace Hotel*, 03-CV-0091, 2005 U.S. Dist. LEXIS 34659 (E.D.N.Y. Sept. 28, 2005) (granting defendant's motion on the pleadings in an employment discrimination action, although plaintiff alleged that she signed the release under duress); *Farrell v. Title Assocs.*, 03 Civ. 4608, 2004 U.S. Dist. LEXIS 2508 (S.D.N.Y. Feb. 19, 2004) (treating defendant's 12(b)(6) motion as a motion for summary judgment and dismissing plaintiff's discrimination complaint due to a release, even though plaintiff alleged duress); *Landau*, 97 Civ. 3465, 1997 WL 590854; *Grabe v. Ziff Davis Publ'g Co.*, No. 91 Civ. 6275, 1995 WL 688912 (S.D.N.Y. Nov. 20, 1995) (converting defendant's 12(b)(6) motion to a motion for summary judgment and dismissing plaintiff's complaint due to a release, even though plaintiff alleged duress) (cited by plaintiff for another proposition in the Opp.). Indeed, in *Landau* the Southern District *granted* defendant's pre-answer motion to dismiss finding that plaintiff did not state a valid a claim for economic duress, and was upheld by the Second Circuit. *Landau v. American Int'l Group*, No. 97-9365, 1998 U.S. App. LEXIS 24670 (2d Cir. Sept. 29, 1998). The Court should follow this example and dismiss the Complaint.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully seek dismissal of Plaintiff's Amended Complaint in its entirety, and with prejudice.

Dated: New York, New York
July 16, 2007

                                        LITTLER MENDELSON, P.C.
                                      *Attorneys for Defendants*
                                      By: _____/S/_____
                                          Christina L. Feege (CF-1474)
                                          885 Third Avenue - 16th Floor
                                          New York, New York 10022
                                          (212) 583-9600